## LANGDON v. THE C., B. & Q. R. Co.

1. **Damages:** OVERFLOW. In an action for damages for injuries caused by the overflow of plaintiff's premises, alleged to have been occasioned by the construction of dams by the defendant, it was *held* that plaintiff was not entitled to recover, because the evidence showed that plaintiff would have suffered like injury if the dams had been removed.

*Appeal from Monroe Circuit Court.*

WEDNESDAY, JUNE 5.

THIS is an action in equity for the abatement, as nuisances, of two dams, erected by the Burlington & Missouri River Railroad Company, upon a stream of water called North Avery, which flows across a corner of plaintiff's premises, and for two hundred dollars damages for injuries occasioned by said dams.

The cause was tried by the court upon depositions, and is triable here *de novo*. The court below dismissed the petition, and rendered judgment against plaintiff for costs. The plaintiff appeals.

*Dashiell & Andrews,* for appellant.

*Perry & Townsend,* for appellee.

DAY, J.—Without the aid of maps it is very difficult to obtain or to convey a correct idea of the situation of the

1. DAMAGES: overflow. premises. In the fall of 1869 the Burlington & Missouri River Railroad Company, under which

the defendant claims, built a dam across North Avery creek. In 1870 the plaintiff bought the premises in controversy, being about twenty-three rods in length from east to west, about eighteen rods in width at the eastern and wider end, and containing about two acres. North Avery creek enters said premises about midway of the west line, and leaves them about two rods east from the south-west corner, flows a few rods to the south, turns and flows to the east about six rods south of plaintiff's south line. In 1873 the plaintiff, at a cost of about two thousand dollars, erected a house, with a cellar thereunder, on the west half of the land in question, and six hundred and twenty feet above the dam. In 1874 plaintiff built a barn about midway of the north line of said real estate. Between the plaintiff's east line and the dam is a pond or bayou, on the north side of North Avery creek. A slough, about half a mile in length, running from the north, passes near plaintiff's north-east corner, and, running thence in a southerly direction, empties into this pond or bayou. Another slough enters plaintiff's land about two rods west of the barn, flows southeasterly between the barn and the house, leaves said real estate about six rods south of the north-east corner, and flows into the slough last above mentioned a short distance from the bayou or pond. Before the house was completed water came into the cellar, and a drain was constructed from the cellar to the slough running across the land in controversy, entering it about three rods from the barn.

In December, 1875, the defendant commenced the construction of another dam, four hundred and fifty feet below the one above mentioned. This dam was finished January 25, 1876. Its height is six and one-half inches less than the height of the first dam at its original construction. The height of the first dam was lowered when the second was built, so as to make the two dams of the same height. The plaintiff claims that the first dam flooded his premises in the summer of 1875; that in the spring of 1876, and since, the

Langdon v. The C., B. & Q. R. Co.

two dams have caused the waters of said creek and slough to overflow plaintiff's real estate, and flood his cellar, to his damage in the sum of two hundred dollars; that by means of the dams the bayou or pond has been filled with mud and deposit, and the water running in said slough has become obstructed so that it cannot flow into said creek, but is thrown back upon plaintiff's premises, flooding his cellar and garden, and tending to render plaintiff's habitation unsafe and unfit for a dwelling.

The evidence is so voluminous that it is not practicable to discuss it fully and satisfactorily within the reasonable bounds of an opinion. We are unable to find affirmatively that the injuries complained of by plaintiff arise from the construction of the dams in question. The evidence shows quite clearly that the top of the deposit in the bayou or pond is two feet higher than the crest of the dams. The evidence satisfies us that this deposit was occasioned, not from back-water from the dams, but from the washings coming down the two sloughs above spoken of, increased by bringing the surrounding country into cultivation. The deposit thus formed at the mouth and along the bed of the slough running through plaintiff's premises, has raised the point of the slough where the drain enters it, above the bottom of the cellar, and prevented the drainage of the cellar through the drain as already constructed. The deposit in the bayou or pond is not on plaintiff's premises, but on the premises east and a little south of him. The evidence further shows that the bottom of plaintiff's cellar is three and one-fourth feet above the crest of the dams. The width of the stream opposite plaintiff's premises is about twenty-eight feet. The width of the crest of the lower or narrower dam is fifty-nine and three-fourths feet. When the water rises three and one-fourth feet above the crest of the dams, so as to be on a level with the bottom of the plaintiff's cellar, we are unable to say from the evidence that the dams would be any obstruction to the flow of the stream, because of their great width as compared with the

width of the stream. If the dams do not, at that height, obstruct the flow of the water, it is clear that they would have no effect upon the overflow of plaintiff's premises. In 1869 the water washed the upper dam away, and flooded the entire premises in controversy, even running over the place where plaintiff's house now stands. The evidence shows that the stream often overflowed its banks before the dams were built, and that, if the dam was not there, the water would frequently rise within a few feet of plaintiff's house.

We feel quite well satisfied that the injuries which plaintiff has sustained arise from the undesirable location of his premises, rather than from any act of the defendant, and that, if the dams were removed, as plaintiff prays, he would not enjoy immunity from like annoyance and loss. The court did not, we think, err in dismissing plaintiff's petition.

AFFIRMED.